UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| **KIMBERLY SHERMAN** | |
| *Plaintiff,* | Case No: 9:25-cv-80022 |
| v. | |
| **CLARITY SERVICES, INC.,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Kimberly Sherman ("Ms. Sherman"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Sherman against the Defendant for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Jurisdiction under the FCRA, 15 U.S.C. § 1681p and § 34.01, Fla. Stat.

3. The Defendant is subject to the provisions of the FCRA, 15 U.S.C. § 1681p and to the jurisdiction of this Court, pursuant 28 U.S.C. § 1331.

4. Venue is proper in West Palm Beach County, Florida, because the acts complained of were committed and / or caused by the Defendants therein.

## PARTIES

### Ms. Sherman

5. Ms. Sherman is a natural person residing in the City of Boca Raton, Palm Beach County, Florida.

6. Ms. Sherman is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or

furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Sherman

10.     At some point in or prior to 2018, Clarity began maintaining a credit file on Ms. Sherman.

11.     Clarity, a CRA, programs its systems to acquire and report as much information as possible, with little regard to the quality of the data, or if the data could even possibly be true.

12.     For example, Clarity reported on February 24, 2021 that Ms. Sherman had lived at her current residence for 20,180,810 months, which is 1,681,734 years, when Earth was still in the Pleistocene epoch. **SEE PLAINTIFF'S EXHIBIT A.**

13.     Clarity reported on the same day February 24, 2021 that Ms. Sherman had been at her employer for 20,040,816 which is 1,670,068 years. *Id.*

14.     As common-sense dictates, this information has zero possibility of actually being true and is indicative of how its systems are programmed to function: scoop up as much data as possible and include it in the consumer's credit file, even if there is no chance the data could even possibly be true.

15.     In other instances, Clarity reported data inherently contradictory: On December 11, 2022, Clarity reported that Ms. Sherman had worked 0 months with

her employer; on September 18, 2024, 11:59 am Clarity reported she had worked at her employer for 60 months; and on September 18, 2024, 12:00 PM Clarity reported she had worked for her employer for 120 months. *Id.*

16. As is virtually axiomatic, all of the above cannot possibly be true.

17. On October 02, 2024, Clarity reported that Ms. Sherman's next paycheck would be on January 1, 2001, e.g., 22 years in the past. *Id.*

18. Once again, common sense dictates someone would not have a "next" payday of almost two and a half decades in the past.

19. The "January 1, 2001" date is a placeholder, dummy value automatically inserted by Clarity's systems when information is missing or unreadable.

20. Thus, not only do Clarity's systems not consider if data could even potentially be true, they are also literally *programmed to insert false information* into consumer credit files in certain circumstances, despite the FCRA's mandate it utilize procedures designed to ensure maximum possible accuracy of information.

21. At no point does Clarity disclose to consumers or readers of Ms. Sherman's credit reports that some data is made-up, placeholder data, nor is it reasonable to even have such procedures: if data is unavailable, it should be omitted, not fabricated.

22. Around September 2024, Clarity began incorporating information into Ms. Sherman's credit file stating she had more than one driver's license active, which she does not.

23. Clarity reported on September 18, 2024 that Ms. Sherman had another driver's license ending in -9639, which she does not.

24. Clarity reported on October 12, 2024 that Ms. Sherman had a third driver's license ending in -9630, although it redacted all the other digits.

25. Clarity's credit disclosure to Ms. Sherman lists only the last four digits of each driver's license number, with the remaining digits redacted.

26. Upon information and belief, Clarity provided the full, unredacted license numbers to creditors who obtained Ms. Sherman's credit report.

27. Ms. Sherman did not ask Clarity to redact any of the information in her disclosure, nor did Clarity have any authority to so per the FCRA when it provides that information to creditors in full.

28. "Patrica Lending," an online lender that issues loans with interest rates over 700% despite its being unlawful in most states, provided one of the "alternate" driver's license numbers to Clarity.

29. Likely, Patrica Lending purchased Ms. Sherman's information from an unregulated data broker who obtained it from yet another broker.

30. Despite this, Clarity incorporated it into Ms. Sherman's credit file.

31. Clarity's abjectly fails to maintain reasonable procedures designed to ensure maximum possible accuracy of data reported.

32. Clarity, a subsidiary of Experian Information Solutions ("Experian"), one of the largest CRAs in the world, operates in stark contrast to its parent company.

33. While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a *lingua franca* – Clarity requires no such compliance with Metro 2 guidelines and has no discernable quality-assurance standards.

34. Records from Clarity show it sold at least 75 reports regarding Ms. Sherman in the past two years.

35. Each of these reports contained false and preposterous information about Ms. Sherman's employment history, housing status, income, work address, and more.

36. The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> Accuracy of Report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. *15 U.S.C. §1681e(b).*

Page **6** of **21**

37. Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Sherman.

38. Clarity was thus aware that when it sold reports on Ms. Sherman in the last two years that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

39. Clarity's credit scores are based primarily on changes to a consumer's address, employment, income, bank account, and similar information.

40. Clarity's Credit Score for Ms. Sherman on January 6, 2024 was 880 out of a possible 951. **SEE PLAINTIFF'S EXHIBIT B.**

41. The top factor as to why her score was not higher was "Number of changes in application information," e.g. length of time at address, employer, number of driver's licenses, and so on.

42. Thus, Clarity's false reporting

**Clarity Fails to Meaningfully Disclose Legally-Required Information**

43. On May 29, 2024, Ms. Sherman requested her Clarity consumer credit disclosure.

44. Upon receipt of Ms. Sherman's request, Clarity was required to "clearly and accurately" disclose all information in Ms. Sherman's file at the time of her request, including identification of *each* person, including an end user if the

report was obtained by a reseller, who obtains a consumer report from Clarity within the prior year *for any purpose*. See 15 U.S.C. § 1681g(a)(3)(A)(ii).

45. "Identification" is defined in the FCRA as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." 15 U.S.C. § 1681g(a)(3)(B)(i).

46. Frequently, Clarity fails to even come close to fulfilling its legal obligations to disclose this data, often disclosing what can be fairly called incomprehensible gobbledygook which virtually no one would comprehend.

47. For example, Clarity's disclosure shows an inquiry made on December 06, 2024 as such:

| Date/Time/Tracking # | Purpose | Type | Company |
|---|---|---|---|
| 12/6/2024 4:38:51 pm EST 5jp9gm8pe6 | Credit Application | Online Line of Credit | CCB/TLS/MK Analytics/Propel |

**SEE PLAINTIFF'S EXHIBIT C.**

48. Clarity disclosed what appears to be four end users concerning a single inquiry; moreover, "CCB/TLS/MK Analytics/Propel" is not the name of any creditor readily ascertainable to a reasonable person. A Google search for this term produces results that are meaningless. No phone number or address(es) are provided by Clarity. This labeling does not clearly identify what entity made the inquiry as is required by law. *Id.*

49. Clarity has been sued numerous times in the past for failing to disclose the names of persons obtaining credit reports as required by law.

50. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See*, *e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

51. Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Sherman great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

52. Clarity has been failing to provide the legally-required trade names of persons obtaining credit reports, written in full, for at least 10 years, and often substitutes impossible-to-understand shorthand instead.

53. Clarity thus failed to use reasonable procedures when preparing the credit reports sold to each lender.

54. Clarity thus failed to use reasonable procedures when preparing a consumer disclosure to provide to Ms. Sherman upon her request.

55. As a result of the Defendant's actions, Ms. Sherman has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

56. Ms. Sherman has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

57. Ms. Sherman adopts and incorporates paragraphs 1 – 56 as if fully stated herein.

58. Clarity violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Sherman when Clarity sold consumer reports containing erroneous information about her housing status, employer, income, and more.

59. Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers' housing status, employer, income, and more.

60. Clarity's conduct was thus willful or done with a reckless disregard for Ms. Sherman's rights under the FCRA.

61. As a result of its conduct, Clarity is liable to Ms. Sherman pursuant to the FCRA for the greater of Ms. Sherman's actual damages or statutory damages

of up to $1,000 for *each occurrence*, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Sherman respectfully requests this Honorable Court enter judgment against Clarity for:

a. The greater of Ms. Sherman's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

62. Ms. Sherman adopts and incorporates paragraphs 1 – 56 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

63. Clarity violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Sherman when Clarity sold consumer reports containing erroneous information about her housing status, employer, income, and more.

64. Clarity owed Ms. Sherman a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Sherman.

65. Clarity breached this duty when it sold consumer reports containing erroneous information about consumers' housing status, employer, income, and more.

66. Clarity thus acted negligently, and Ms. Sherman is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Sherman respectfully requests this Honorable Court enter judgment against Clarity for:

a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other relief that this Court deems just and proper.

### COUNT III
### CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

67. Ms. Sherman adopts and incorporates paragraphs 1 – 56 as if fully stated herein.

68. Clarity violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, when applicable, that procured Ms.

Sherman's consumer report during the one-year period preceding the date on which the request was made. As described in the foregoing, more than a dozen inquiries were disclosed with false, made-up, and/or non-existent information, and/or utilized incomprehensible shorthand, and fell far short of being "written in full" as required.

69. Clarity's conduct was thus willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

70. Clarity is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Sherman's actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Sherman respectfully requests this Honorable Court to enter judgment against Clarity for:

a. The greater of statutory damages of $1,000 per incident and Ms. Sherman's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and,

d. Such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)**
**(Plead in the alternative to Count III)**

71. Ms. Sherman adopts and incorporates paragraphs 1 – 56 as if fully stated herein, and pleads this count strictly in the alternative to Count III.

72. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, when applicable, that procured Ms. Sherman's consumer report during the one-year period preceding the date on which the request was made. As described in the foregoing, more than a dozen inquiries were disclosed with false, made-up, and/or non-existent information, and/or utilized incomprehensible shorthand, and fell far short of being "written in full" as required.

73. Clarity's conduct was negligent, and could easily be foreseen to cause harm to Ms. Sherman, and did cause harm to Ms. Sherman.

74. Clarity's conduct was negligent, and Clarity is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Sherman's actual damages.

**WHEREFORE**, Ms. Sherman respectfully requests this Honorable Court to enter judgment against Clarity for:

a. Ms. Sherman's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on January 6, 2025, by:

> **SERAPH LEGAL, P.A.**
>
> /s/ *Fethullah Gulen*
> Fethullah Gulen, Esq.
> Florida Bar Number: 1045392
> FGulen@seraphlegal.com
> 2124 W Kennedy Blvd., Suite A
> Tampa, FL 33606
> Tel: 813-567-1230
> Fax: 855-500-0705
> *Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**
A    Ms. Sherman's Clarity Report, January 3, 2025, Housing, Employer, and Income Information – Excerpts
B    Ms. Sherman's Clarity Credit Score, January 3, 2025, Scoring Information - Excerpt
C    Ms. Sherman's Clarity Report, January 3, 2025, Inquiries – Excerpt